EVERETT PRINGLE
811 Woodson Drive
Oakland, CA 94603
Phone: (510) 909-4996
Email: pringlee1@aol.com
Pro se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EVERETT PRINGLE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL REGAN, Administrator,<br>U.S. Environmental Protection Agency,<br><br>Defendant. | Case No: 19-cv-07432-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION TO SET ASIDE SETTLEMENT AGREEMENT**<br><br>Date: February 16, 2022<br>Time: 2:00 p.m.<br>Place: via Zoom or telephonic means The Honorable William H. Orrick |

I, EVERETT PRINGLE, declare:

1. My name is Everett Pringle. I am the Plaintiff in this case.

2. I desire to set aside the settlement agreement.

3. I base this desire on questions of its validity under Title VII of the Civil Rights Act of 1964 ("Title VII"), The Age Discrimination in Employment Act of 1967 ("ADEA"), as Amended by the Older Workers' Benefits Protection Act, based on my understanding of the law.

4. On September 30, 2021, I attended a Settlement Conference on Order of this Court.

Page **1**
Case No.: 19-cv-07432-WHO         Plaintiff's Opposition to Defendant's Motion to Enforcement
Settlement Agreement and Motion to Set Aside Settlement Agreement

5. In or about September 2016, I initially filed an EEO Complaint based on racial discrimination, retaliation, and hostile work environment in contravention of Title VII.

6. On or about November 12, 2019, I filed this suit in Federal Court.

7. Prior to and on multiple occasions during the Settlement Conference, I communicated my wishes to move forward to trial with my counsel.

8. I agreed to participate in good faith with the Court's Settlement Conference Order.

9. During the Settlement Conference, in the absence of Defendant, Judge Spero informed me and my counsel that my legal fees could exceed $500,000.00 if my case went to trial.

10. Judge Spero also informed me that I may have to pay the Defendant's legal fees even if I won my Title VII case.

11. Judge Spero did not articulate how much I would have to pay for Defendant's legal fees and it was my understanding that it would be reasonable to assume that Defendant's legal fees from the time of the Settlement Conference could easily exceed $500,000.00 by the end of a scheduled jury trial.

12. In private settlement discussions without the Defendant present, I articulated to Judge Spero that with the exorbitant amount of cost it takes a Plaintiff and/or victim to go to court, it seems like the court system works against the victims of discrimination because the Plaintiff must risk great financial loss while the Defendant relies on taxpayers' dollars to fight discrimination claims.

13. From my understanding, the legal fees if I were to proceed to trial—even if the result was favorable—could be at or above $1,000,000.00.

14. As I am a working-class public servant, $1,000,000.00 is an exorbitant cost.

15. Therefore, I needed to weigh the decision to move to trial with great care and consideration.

Page 2
Case No.: 19-cv-07432-WHO                Plaintiff's Opposition to Defendant's Motion to Enforcement
                                         Settlement Agreement and Motion to Set Aside Settlement Agreement

16. I needed to evaluate my ability to pay such an extraordinary cost, the financial impact on my family and myself, the appropriateness of going to trial to accomplish a just end, the moral obligation of warning or making the public aware of violations of Title VII rights, and finally, get approval from my wife in regard to the financial decision to go to trial.

17. During the Settlement Conference, Defendant counter-offered $200,000.00.

18. In response to that offer, Judge Spero articulated that he believed this to be the best deal Defendant would offer and that I and my counsel should have a private discussion to determine whether I should accept the counteroffer.

19. My counsel advised me that I should accept the counteroffer of $200,000.00.

20. Though Judge Spero suggested that this may be the best Defendant would offer, and my counsel recommended acceptance, I was not obliged to accept Defendant's offer.

21. I was not obliged to accept Defendant's offer mainly due to the intestinal fortitude it took to honorably weather and endure the progressive and implicit racism that negatively distorted and reshaped my personal and professional reality within the workplace. Defendant maintained absolute power and control over the narrative of my work performance which shielded themselves from the consequences of their lies. Regardless of me being a productive and upstanding employee, I was not able to protect myself from the workplace racism and harassment and thwart the aversive racism and racial abuse projected onto me. The racial stereotypes and insinuated lies about my work performance were repeated often enough it became accepted as truth. It is my hope that the truth is the mortal enemy of a lie, thus by extension, in this matter, a trial is the greatest enemy of Defendant's lies and my only option to hold Defendant accountable for violating my civil rights and hopefully regaining some resemblance of the competent, productive and professional reality that was stolen from me.

22. I had to weigh this need and/or hope to defend my civil rights and not be discriminatorily objectified in the workplace with the potential of spending $1,000,000.00 to hold Defendant accountable for violations of Title VII in a court of law.

Page **3**
Case No.: 19-cv-07432-WHO          Plaintiff's Opposition to Defendant's Motion to Enforcement
                                   Settlement Agreement and Motion to Set Aside Settlement Agreement

23. In discussing my hesitancy to agree to the settlement agreement and what the final written settlement agreement would include, my counsel told me that it would include language required by the Older Workers' Benefit Protection Act that would allow me the opportunity to revoke the settlement agreement and that this language would be included in the agreement because I am over 40 years of age.

24. With the information about the language required by the Older Workers' Benefit Protection Act (OWBPA) and my understanding that by law I could revoke the settlement agreement if needed, I was put at ease that I would have time to consult with my family members who would be impacted by the cost of an expensive trial.

25. I did not inform my counsel that I was going to consult with family.

26. My understanding of the law was that even though Judge Spero had communicated that "Once the settlement is agreed to, it is a binding deal enforceable in accordance with its terms," that under the Older Workers' Benefit Protection Act, because I am over 40, I had the legal ability to revoke the settlement agreement.

27. At the end of the settlement conference, my understanding was that there were no limitations on my ability to revoke the agreement in this scenario and I asked no questions.

28. Based on my understanding moments after hearing about the ability to revoke the settlement agreement under the Older Workers' Benefit Protection Act, I accepted the terms of the settlement agreement.

29. Based on my understanding of the law, I consulted with my family after the settlement conference regarding the extraordinary financial sacrifice of going to trial.

30. I understood that if my family expressed that the financial burden of going to trial would be too costly, then the orally binding settlement agreement established on September 30, 2021, would remain in effect and I would sign the written settlement agreement.

31. However, it was also my understanding that if my family was supportive of moving forward with the financial burden of a trial, I would have the right to revoke the orally binding settlement agreement and move towards a trial date.

32. After my private discussions with my counsel, I spoke with Judge Spero and informed him of my willingness to assent to the settlement agreement.

33. Judge Spero then brought all the parties together and made the statement "Once the settlement is agreed to, it is a binding deal enforceable in accordance with its terms. Now, it is customary, and moreover, it is wise, and it will happen in this case that the parties will endeavor to memorialize the settlement in a written document based on the standard formal agreement that the government has in such cases, and you'll negotiate and hopefully sign it. But if you fail in that endeavor for any reason or no reason, this is still a binding deal today."

34. I am not a lawyer, paralegal, or in the business of evaluating or deciphering case law.

35. I understood and knowingly accepted Judge Spero's above statement based on my understanding of the Older Workers' Benefit Protection Act.

36. I voluntarily entered into the settlement agreement without the legal knowledge of the limitations of the Older Workers' Benefit Protection Act provisions regarding my ability to revoke the settlement agreement.

37. Although I understood that the terms of the oral settlement agreement were binding and enforceable, in accordance with its terms, as stated by Judge Spero, it is important to note my understanding of the law was that the "terms" include the Older Workers' Benefit Protection Act.

38. On October 4, 2021, I received the written settlement agreement from the Defendant via an email from my counsel.

39. Defendant's written settlement agreement provided further validity and confirmation to me that my understanding of the terms of the settlement agreement under the Older Workers' Benefit Protection Act were consistent and accurate.

40. In accordance with Defendant's written settlement agreement ¶¶ 17-18, Knowing and Voluntary Waiver of Remedies Under ADEA, the language is clear, concise, and in concert with my understanding of the ADEA.

41. ¶ 17 states "Plaintiff has up to twenty-one (21) calendar days from the date Plaintiff receives this agreement to review and consider this agreement."

42. ¶ 18 states "Once Plaintiff signs and dates this agreement, Plaintiff will have 7 days in which to revoke acceptance."

43. The information provided to me regarding the ADEA provisions in the written agreement did not warrant me to ask questions.

44. However, ¶¶ 17-18 of the agreement further solidified my understanding of the provisions of the ADEA, which were exactly how my counsel verbally explained the Older Workers' Benefit Protection Act provision during the settlement agreements within an established timeframe.

45. After reviewing the settlement agreement, I consulted with my family members on the terms as I understood them to be and potential cost of going to trial.

46. My family unanimously decided that taking the case to trial could possibly have far reaching positive implications on how African Americans are treated in the workplace and that the financial sacrifice was worth the attempt to hold Defendant accountable for its violations of Title VII laws in the workplace.

47. On October 19, 2021, I emailed my counsel and informed them that I would not be signing the settlement agreement and that I could no longer afford the cost to retain TELG as my counsel.

48.     On October 19, 2021, and October 21, 2021 via email, and on October 22, 2021 via telephone, my counsel informed me of the limitations of the Older Workers' Benefit Protection Act provisions and the obscurity of case law that allows appellants to use the Older Workers' Benefit Protection Act provisions to revoke settlement agreements.

49.     It is my understanding of the law that my standing for requesting the Court set aside the settlement agreement is generally when an employee knowingly and voluntarily consents to the waiver. The rules regarding whether a waiver is knowing and voluntary depend on the statute under which a lawsuit has been, or may be, brought. The rules under 29 CFR § 1625.22 for waivers under the ADEA are defined by statute – the Older Workers Benefit Protection Act. *See*, e.g., *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1534 (3d Cir. 1987). Under other laws, such as Title VII, *See*, e.g., *Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009) the rules are derived from case law.  In addition to being knowingly and voluntarily signed, a valid agreement also must: (1) offer some sort of consideration, such as additional compensation, in exchange for the employee's waiver of the right to sue; (2) not require the employee to waive future rights; and (3) comply with applicable state and federal laws. See, e.g., *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 428 (1998).

50.     It is my understanding of the law that to determine whether an employee knowingly and voluntarily waived his discrimination claims, some courts rely on traditional contract principles and focus primarily on whether the language in the waiver is clear.  Most courts, however, look beyond the contract language and consider all relevant factors – or the totality of the circumstances -- to determine whether the employee knowingly and voluntarily waived the right to sue. *See* e.g., *Wastak v. Lehigh Health Network*, 342 F.3d 281 (3d Cir. 2003) (courts must inquire into the totality of circumstances "to determine whether the execution of a waiver was 'knowing and voluntary'"); *Smith v. Amedisys, Inc.*, 298 F.3d 434 (5th Cir. 2002) ("[i]n determining whether a release was knowingly and voluntarily executed, this court has adopted a 'totality of the circumstances' approach"). These courts consider the following

Page **7**

Case No.: 19-cv-07432-WHO            Plaintiff's Opposition to Defendant's Motion to Enforcement
                                     Settlement Agreement and Motion to Set Aside Settlement Agreement

circumstances and conditions under which the waiver was signed: (a) whether it was written in a manner that was clear and specific enough for the employee to understand based on his education and business experience; (b) whether it was induced by fraud, duress, undue influence, or other improper conduct by the employer; (c) whether the agreement has the effect of misleading, misinforming, or failing to inform participants and affected individuals. Any advantages or disadvantages described shall be presented without either exaggerating the benefits or minimizing the limitations; (c) whether the employee had enough time to read and think about the advantages and disadvantages of the agreement before signing it; (d) whether the employee consulted with an attorney or was encouraged or discouraged by the employer from doing so; (e) whether the employee had any input in negotiating the terms of the agreement; and (f) whether the employer offered the employee consideration (e.g., severance pay, additional benefits) that exceeded what the employee already was entitled to by law or contract and the employee accepted the offered consideration.

51. It is my understanding of the law that the settlement agreement does not meet the factors under the ADEA and OWBPA for being knowingly and voluntary or the relevant factors under Title VII for the totality of the circumstances.

52. It is my understanding of the law that the settlement agreement was not written in a manner that was clear and specific enough for me to understand based on my education and business experience.

53. I do not have the legal business acumen or education to understand the legal limitations of the ADEA and/or Title VII provisions that were not explicitly spelled out in Defendant's settlement agreement, specifically, limitations regarding my ability to revoke the settlement agreement.

54. Therefore, it is my understanding of the law that Defendant's settlement agreement does not meet the relevant factors of Title VII, ADEA or OWBPA waivers and/or

settlement agreements because the agreement was not written in a manner that was clear and specific enough for me to understand the limitations of the ADEA provisions as written.

55. It is my understanding of the law that the agreement had the effect of misleading, misinforming, or failing to inform the participants and affected individuals. The advantages or disadvantages described were presented in a way that exaggerated the benefits or minimized the limitations.

56. It is my understanding of the law that based on the contextual language and terms in which the settlement agreement was written by the Defendant and based on the information provided to me prior to assenting to the settlement agreement, the agreement was misleading because if failed to inform me of the limitations of applying the ADEA provisions to the settlement agreement and exaggerated the benefit of applying the ADEA provisions to the settlement agreement. Without explaining the factors and/or criteria needed in the settlement agreement to apply the provisions of the ADEA, the agreement exaggerated my ability to revoke the settlement agreement. This exaggeration or misleading information was the causation that beguilingly persuaded me to assent to the agreement because I believed I had the ability and time to communicate the advantages and disadvantages of the settlement agreement to my family and revoke the agreement based on the outcome of the decision made by my family.

57. It is my understanding of the law that Defendant's settlement agreement does not meet the relevant factors of Title VII, ADEA or OWBPA waivers and/or settlement agreements because the written settlement agreement and information provided to me prior to assenting to the agreement was misleading and/or exaggerated.

58. It is my understanding of the law that Defendant did not offer any consideration, such as additional compensation, in exchange for my waiver of the right to sue.

59. On September 2, 2021, my counsel sent Defendant my Settlement Conference Statement.

60. My Settlement Conference Statement provided Defendant with my estimated costs and relief sought in ¶¶ V and VI, respectively.

61. My legal fees as of September 2, 2021 were approximately $314,412.53 and relief sought consisted of the following: (a) A judgment in my favor; (b) Economic damages for 11 days of unpaid suspension; (c) Compensatory damages to be determined by the jury; (d) Reasonable attorney's fees and costs to be determined by the court; (e) Pre-judgment interest;  (f) Expungement of his personnel record; including my position on settlement of (i) $275,000.00; (ii) Attorney fees of $314, 412.53; and (iii) Expungement of records.

62. The settlement agreement I received from Defendant on October 4, 2021, contained among other things, the following agreements: (a) Defendant would pay me a total sum $200,000.00 for attorney fees: (b) Expungement of personnel records: and (c) Agree not to discipline me for conduct as of September 30, 2021.

63. I argue that attorney fees are not considered compensation or additional compensations. Compensation as defined as, that which is given or received as an equivalent for services, debt, want, loss, or suffering; amends; remuneration; recompense (http://webstersdictionary1828.com/) is not interchangeable with and does not convey the same denotation as Defendant's willingness to pay my attorney fees. However, if the court does find reason to determine that the relief of attorney fees conveys the same meaning as compensation, it should be noted that compensation can also be defined as, in law, a set-off; the payment of a debt by a credit of equal amount (http://webstersdictionary1828.com/).

64. I argue that in either case, Defendant's agreement to pay me $200,000.00 in legal fees does not constitute the meaning of additional compensation because it neither is "equivalent" or "an equal amount" to my $314,412.53 in attorney fees or any known services, debt, want, loss, or suffering: amends; remuneration or recompense identified in my Settlement Conference Statement. As such, Defendant is aware of my estimated cost and relief sought.

65. It is my understanding of the law that Defendant's settlement agreement does not meet the relevant factors of Title VII, ADEA or OWBPA waivers and/or settlement agreements because the settlement agreement did not offer me additional compensation.

66. It is my understanding of the law that release of Title VII claims are against public interest.

67. As stated in my September 2, 2021, Settlement Conference Statement, I am a member of a protected class and I will prevail at trial because I can easily make a prima facie case for race discrimination, retaliation, and hostile working environment. I am also able to present at trial material facts that Defendant has perpetuated years of pervasive violations of Title VII laws where evidence of fraud and undue influence exist through intent and/or negligence.

68. It is my understanding of the law that by enforcing the settlement agreement and not allowing the circumstances of the case to proceed to trial, the release of my Title VII claims would be against public interest. The public relies on Defendant to execute and enforce environmental laws, policies, and procedures to protect human health and the environment regardless of race, color, religion, sex and national origin in a manner that is fair, equitable and in compliance with Title VII laws. Therefore, if I have evidence that Defendant has demonstrated an aptitude to discriminate based on race, color religion, sex or national original, it is in the public's best interest to hear the case at trial.

I declare under penalty of perjury under the laws of the state of California and the United States of America that the foregoing is true and correct.

Executed on January 25, 2022 in San Francisco, CA.

_____
Everett Pringle, Plaintiff

Page **11**
Case No.: 19-cv-07432-WHO                     Plaintiff's Opposition to Defendant's Motion to Enforcement
Settlement Agreement and Motion to Set Aside Settlement Agreement

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2022, a true and correct copy of the foregoing was served via electronic mail upon:

David L. Anderson United States Attorney

Sara Winslow Chief, Civil Division

Jevechius D. Bernardoni Assistant United States Attorney

450 Golden Gate Avenue,

Box 36055

San Francisco, California 94102-3495

Telephone: (415) 436-7164

Facsimile: (415) 436-7234

jevechius.bernardoni@usdoj.gov

_____
Everett Pringle, Plaintiff