STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

    450 Golden Gate Ave.
    San Francisco, California 94102
    Telephone: (415) 436-7164
    Facsimile: (415) 436-7234
    jevechius.bernardoni@usdoj.gov

Attorneys for Defendant
Michael Regan, Administrator of the
United States Environmental Protection Agency

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EVERETT PRINGLE,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL REGAN, ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>    Defendant. | CASE NO. 3:19-CV-07432 WHO<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO ENFORCE ORAL SETTLEMENT AGREEMENT; OPPOSITION TO PLAINTIFF'S "FIRST MOTION TO SET ASIDE SETTLEMENT AGREEMENT"; AND NOTICE OF NON-OPPOSITION TO PLAINTIFF'S "SECOND MOTION FOR EXTENSION OF TIME TO FILE RESPONSE/REPLY TO DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT"**<br><br>Date:  February 16, 2022<br>Time:  2:00 p.m.<br>Place: via Zoom or telephonic means<br>The Honorable William H. Orrick |

## I.    Introduction[1]

Plaintiff seeks to rescind the binding, Court-recorded September 30, 2021 oral settlement of his

Title VII claims and proceed to a jury trial in this Title VII case by refusing to sign a written waiver of

---

[1] Plaintiff did not file a timely response to Defendant's motion to enforce the September 30, 2021

DEF.'S REPLY ISO MOTION TO ENFORCE; DEF.'S OPP. TO PL.'S MOTION TO SET ASIDE; AND DEF.'S NON-OPP. TO PL.'S MT. TO EXTEND TIME
CASE NO. 3:19-CV-07432 WHO        1

1   Age Discrimination in Employment Act ("ADEA") claims.  That is an untenable position for multiple

2   reasons.  (1) Plaintiff's refusal to sign the Older Workers Benefit Protection Act ("OWBPA") waiver in

3   the written settlement documentation has no impact on the September 30, 2021 binding settlement of

4   Plaintiff's Title VII claims—simply stated, Plaintiff cannot resurrect his already-settled Title VII claims

5   by refusing to sign an OWBPA waiver, (2) Plaintiff has not raised any cognizable waiver concerns under

6   Title VII, (3) Plaintiff's outward manifestations of consent on September 30, 2021 do not suggest that, if

7   Plaintiff ultimately decided not to waive his ADEA claims, Plaintiff reserved the right to void the entire

8   September 30, 2021 settlement agreement, and (4) there is no ADEA claim in this case to send to a jury,

9   and any ADEA claims that could have survived the September 30, 2021 settlement agreement are

10  unrelated to the Title VII claims raised in this lawsuit and untimely.

11          Plaintiff's consideration arguments fare no better.  The September 30, 2021 settlement agreement

12  clearly is supported by consideration—not only the $200,000 payment for attorney's fees, but also

13  Defendant's agreement to expunge certain records from Plaintiff's personnel file and not to discipline

14  Plaintiff for certain conduct.  Further, the $200,000 payment in the Court-recorded settlement agreement

15  was earmarked for attorney's fees at ***Plaintiff's*** insistence, and Plaintiff's effort to void the settlement

16  agreement by arguing that attorney's fees are not consideration is inconsistent with his prior conduct.  And

17  Plaintiff's position that Defendant is required to pay the full value of his settlement demand for there to

18  be an enforceable settlement agreement is not well founded—that position, if true, would invalidate every

19  compromise settlement.

20          Finally, Plaintiff's extensive discussion of the unexecuted written settlement documentation is

21  wholly immaterial.  Plaintiff did not receive the draft written settlement documentation until ***after*** he had

22  already entered into the binding oral settlement agreement on September 30, 2021, and that is the

23

24

25  _____

26  settlement agreement.  Although the ECF caption for Plaintiff's January 25, 2022 filing indicates that it is
    a "First MOTION to Set Aside Settlement Agreement, Second MOTION for Extension of Time to File
    Response/Reply to Defendant's Motion to Enforce Settlement Agreement," Defendant treats that filing as
27  a late-filed response to Defendant's motion to enforce the September 30, 2021 settlement agreement and
    responds accordingly.  *See* ECF No. 101.
28

1    agreement Defendant seeks to enforce.   Thus, anything in the unexecuted written settlement

2    documentation is irrelevant to the dispute currently before the Court.

3           In short, nothing in Plaintiff's response brief undermines the conclusion that the parties have a

4    summarily enforceable, binding settlement agreement.

5    **II.      The Parties Have A Binding, Summarily Enforceable Settlement Agreement**

6           **A.      Plaintiff's Refusal To Sign The OWBPA Waiver Does Not Negate The Binding
                     Settlement Of Plaintiff's Title VII Claims**

7

8           Plaintiff contends that he can nullify his binding, Court-recorded oral agreement to settle the

9    Title VII claims in this case simply by refusing to sign a waiver of his ADEA claims.  *See generally* ECF

10   No. 101.  Plaintiff's ADEA waiver arguments are a red herring—the Court-recorded September 30, 2021

11   settlement agreement irrevocably resolved the Title VII claims at issue in this lawsuit, and there is nothing

12   left in this Title VII case to send to a jury.

13          First, Plaintiff's refusal to sign an OWBPA waiver cannot resuscitate Plaintiff's now-settled

14   Title VII claims.  The parties agreed to resolve the disputed claims in full on September 30, 2021 and put

15   that comprehensive, binding agreement on the record.  This agreement included a comprehensive, binding

16   release (*i.e.*, "Plaintiff releases the defendant from all claims known or unknown arising out of any events

17   occurring up through today . . . .").  Bernardoni Decl. Ex. A at 4:18-20.  Plaintiff's current assertion that

18   he does not agree to release ADEA claims cannot undo the binding settlement agreement as to all

19   non-ADEA claims—the only claims asserted in this lawsuit—to which Plaintiff agreed.  To be sure, the

20   September 30, 2021 *oral* settlement agreement does not comply—and could not have complied—with the

21   OWBPA's "strict, unqualified statutory stricture on waivers," at least because the OWBPA requires that

22   a plaintiff must be "advised ***in writing*** to consult with an attorney prior to executing the agreement."

23   *Oubre v. Entergy Operations*, 522 U.S. 422, 427 (1998); *see also* 29 U.S.C. § 626(f)(2)(E) (emphasis

24   added).  But that has no bearing on the remainder of the settlement agreement in this Title VII case, which

25   was effective immediately on September 30, 2021 and which remains binding notwithstanding Plaintiff's

26   current stance on an ADEA release.

27

28

DEF.'S REPLY ISO MOTION TO ENFORCE; DEF.'S OPP. TO PL.'S MOTION TO SET ASIDE; AND DEF.'S NON-
OPP. TO PL.'S MT. TO EXTEND TIME
CASE NO. 3:19-CV-07432 WHO                    3

1    To memorialize the agreement, on October 4, 2021, Defendant provided Plaintiff draft written

2    settlement documentation that complied with the strict statutory waiver requirements under the OWBPA.

3    *See* ECF No. 101 ¶¶ 38-42.  Plaintiff now refuses to execute the written agreement because it contains an

4    OWBPA waiver.   However, Plaintiff's refusal to sign the draft written settlement documentation

5    (purportedly on the basis of the OWBPA waiver language) does not invalidate Plaintiff's binding, Court-

6    recorded September 30, 2021 agreement to settle Plaintiff's Title VII claims.  The ***only*** impact Plaintiff's

7    refusal to execute the written settlement documentation has is that any ADEA claims that Plaintiff might

8    have had are not subject to the September 30, 2021 settlement's comprehensive release of "all claims

9    known or unknown arising out of any events occurring up through today . . . ."  Bernardoni Decl. Ex. A

10   at 4:18-20.  That is because the scope of an OWBPA waiver is expressly limited to rights or claims "under

11   this Act."   29 U.S.C.  626(f)(1); *see also* 29 U.S.C. § 621(b) (confirming that "Act" refers to age

12   discrimination claims); *Johnson v. Veneman*, 569 F. Supp. 2d 148, 156 (D.D.C. 2008) ("Under 29 U.S.C.

13   626(f)(1), the scope of waiver is specifically limited to rights or claims 'under this Act.'").

14       It is well-established that "[t]he OWBPA does not heighten the 'knowing and voluntary' waiver

15   requirements for claims other than ADEA claims." *Johnson*, 569 F. Supp. 2d at 156.  Thus, when faced

16   with a settlement agreement that does not meet the strict statutory requirements of the OWBPA (as this

17   oral settlement could not have done), courts routinely sever non-compliant OWBPA waivers and enforce

18   the remaining portions of settlement agreements. *See, e.g.*, *id.* at 154-57 (finding Title VII claims barred

19   by settlement agreement but allowing ADEA claims to proceed because oral settlement agreement did not

20   comply with 29 U.S.C. § 626(f)(2)); *Rozenfeld v. Dep't of Design & Constr.*, 875 F. Supp. 2d 189, 199-

21   201 (E.D.N.Y. 2012) (finding stipulation does not release ADEA claims because it did not comply with

22   the OWBPA but enforcing settlement as to Title VII claims); *McMahon v. Napolitano*, 2015 U.S. Dist.

23   LEXIS 175071, 2015 U.S. Dist. LEXIS 175071 (E.D.N.Y. Aug. 27, 2015); *Lili v. Ut Med. Group*, No.

24   2:20-cv-02818-JPM-cgc, 2022 U.S. Dist. LEXIS 14049, at *16-19 (W.D. Tenn. Jan. 26, 2022) (refusing

25   to enforce ADEA waiver because term sheet did not meet the OWBPA's statutory waiver requirements

26   but enforcing the remainder of the term sheet).  Indeed, the United States Supreme Court has indicated

27   that a release and waiver can be enforceable against non-ADEA claims while being unenforceable against

28

1    an ADEA claim.  *Oubre*, 522 U.S. at 427-28 (because plaintiff's "release did not comply with the

2    OWBPA's stringent safeguards, it is unenforceable against her *insofar as it purports to waive or release*

3    *her ADEA claim*.  As a statutory matter, the release cannot bar her ADEA suit, *irrespective of the validity*

4    *of the contract as to other claims*") (emphasis added).  Here, Plaintiff is bound by the comprehensive

5    waiver in the September 30, 2021 settlement as to all claims other than ADEA claims, including all of the

6    Title VII claims at issue in this lawsuit.

7            Second, Plaintiff cannot point to the OWBPA's statutory requirements for a "knowing and

8    voluntary" waiver to establish that the settlement of his Title VII claims on September 30, 2021 was not

9    knowing and voluntary.  By their terms, these heightened statutory requirements apply only to ADEA

10   claims.  *Johnson*, 569 F. Supp. 2d at 156.  Thus, the OWBPA's statutory waiver requirements have no

11   role in the enforcement of the September 30, 2021 oral settlement agreement's resolution of Plaintiff's

12   Title VII claims.  Bernardoni Decl. Ex. A at 4:7-6:13; *see generally* SAC.  Instead, the standards for a

13   waiver under Title VII apply.  *Johnson*, 569 F. Supp. 2d at 154-57 (discussing the distinct standards for

14   waivers under Title VII and the ADEA and finding Title VII claims barred by settlement agreement).

15   Plaintiff has not raised any cognizable waiver concerns under Title VII—he instead seeks to exploit the

16   unexecuted OWBPA waiver language in the draft settlement documentation to void the entire binding

17   September 30, 2021 settlement agreement in this Title VII case.  There is no legal or factual basis for

18   Plaintiff to do so.

19           Third, Plaintiff's outward manifestations of consent govern here, and those outward manifestations

20   do not suggest Plaintiff reserved the right to void the entire September 30, 2021 settlement agreement if

21   he ultimately decided not to waive his ADEA claims.  *United Comm. Ins. Serv., Inc. v. Paymaster Corp.*,

22   962 F.2d 853, 856 (9th Cir. 1992).  Plaintiff's opposition brief affirms, under penalty of perjury, that

23   Plaintiff "asked no questions" and "accepted the terms of the settlement agreement."  ECF No. 101

24   ¶¶ 25-28.  In fact, Plaintiff did not tell even his own counsel that he "was going to consult with family"

25   before deciding to tear up the entire September 30, 2021 settlement agreement, much less inform

26   Defendant or Judge Spero that he intended to do so.  *Id.* ¶ 25.  Even if this was Plaintiff's "true intent,"

27   that intent "is irrelevant if it is unexpressed."  *United Comm. Ins. Serv., Inc.*, 962 F.2d at 856.

28

DEF.'S REPLY ISO MOTION TO ENFORCE; DEF.'S OPP. TO PL.'S MOTION TO SET ASIDE; AND DEF.'S NON-
OPP. TO PL.'S MT. TO EXTEND TIME
CASE NO. 3:19-CV-07432 WHO                    5

1    Fourth, following the binding, irrevocable settlement of Plaintiff's Title VII claims on

2    September 30, 2021, there is nothing left in this Title VII lawsuit to send to a jury.  All of the claims at

3    issue in this case arise under Title VII.  *See generally* SAC.  Plaintiff has never claimed that he was

4    discriminated against on the basis of age; he has never pursued an age discrimination claim

5    administratively; he has not administratively exhausted an age discrimination claim; he has never pursued

6    an age discrimination claim in federal court; and he unequivocally did not assert an ADEA claim in the

7    above-captioned action.  Even now—while refusing to comply with the September 30, 2021 settlement

8    agreement purportedly on the basis of an OWBPA waiver—Plaintiff expresses no concern for any ADEA

9    claim that the OWBPA waiver might save; instead, Plaintiff's opposition brief focuses solely on Plaintiff's

10   irrevocably settled Title VII claims.  *See generally* ECF No. 101.  Thus, Plaintiff cannot proceed to a jury

11   trial in this case because any ADEA claims that could have survived the September 30, 2021 settlement

12   agreement (1) have no connection to the substantive Title VII claims raised in this lawsuit and (2) could

13   not be addressed through this lawsuit in any event because Plaintiff cannot administratively exhaust an

14   ADEA claim with respect to *any* of the conduct at issue in the SAC—any such ADEA claim

15   unquestionably would be untimely.  *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008); 29 U.S.C.

16   § 633a(d); 29 C.F.R. § 1614.105(a)(1).

17          **B.     The September 30, 2021 Settlement Agreement Is Supported By Consideration**

18          Plaintiff next argues that the September 30, 2021 settlement agreement is not supported by

19   consideration because Defendant did not agree to Plaintiff's economic and compensatory damages

20   demands and/or did not agree to pay the full amount of Plaintiff's claimed $314,412.53 in attorney's fees.

21   ECF No. 101 ¶¶ 58-64.  Plaintiff's position misunderstands the legal concept of "consideration," and it

22   would undermine *any* compromise resolution.

23          First, the $200,000 payment for attorney's fees undoubtedly qualifies as consideration because this

24   payment will reduce Plaintiff's fees obligation to his former attorneys.  That is a benefit received by

25   Plaintiff by virtue of the agreement and to which Plaintiff was not otherwise entitled.  *Madani v. Cty. of*

26   *Santa Clara*, No. 16-CV-07026-LHK, 2019 U.S. Dist. LEXIS 16736, at *24-25 (N.D. Cal. Jan. 31, 2019).

27

28

DEF.'S REPLY ISO MOTION TO ENFORCE; DEF.'S OPP. TO PL.'S MOTION TO SET ASIDE; AND DEF.'S NON-
OPP. TO PL.'S MT. TO EXTEND TIME
CASE NO. 3:19-CV-07432 WHO                    6

1    Second, there were other compromise terms underlying the September 30, 2021 settlement

2    agreement, all of which qualify as binding consideration.  For example, Defendant also agreed to expunge

3    certain records from Plaintiff's personnel file and not to discipline Plaintiff for certain conduct.

4    Bernardoni Decl. Ex. A at 4:7-5:13.  Defendant was under no obligation to expunge records or to refrain

5    from disciplining Plaintiff, and its agreement to do so qualifies as consideration.  *Madani*, 2019 U.S. Dist.

6    LEXIS 16736, at *24-25; *see also* 1 Witkin, Summary 11th Contracts § 202 (2018) ("Consideration may

7    be an act, forbearance, change in legal relations, or a promise.").

8    Third, Plaintiff's position that attorney's fees "are not considered compensation" is both

9    inconsistent with the negotiation history and highly self-serving.  ECF No. 101 ¶ 63.  At the settlement

10   conference, Defendant counteroffered with a final settlement payment of $200,000.  *Id.* ¶ 17.  The

11   $200,000 final counteroffer was not proposed as a payment for attorney's fees, but rather as a lump sum

12   payment to resolve this case in its entirety.  **Plaintiff** then insisted that the oral settlement agreement

13   specify that the $200,000 payment be for attorney's fees.  Defendant agreed, but only after including the

14   contractual term that "defendant is relying on plaintiff's representation that this payment is for attorneys'

15   fees and costs, and nothing in this agreement should be interpreted as a characterization of the payment

16   for tax purposes."  Bernardoni Decl. Ex. A at 4:10-14.  Thus, Plaintiff's argument that the settlement

17   agreement is not supported by consideration because it provides for the payment of attorney's fees—a

18   contractual term included solely at Plaintiff's insistence—is wholly inconsistent with Plaintiff's prior

19   conduct.

20   Fourth, Plaintiff's position that there is no enforceable settlement agreement because the agreed-

21   upon payment "neither is 'equivalent' or [sic] 'an equal amount'" to the full value of Plaintiff's demands

22   is a non-starter.  ECF No. 101 ¶ 64.  Essentially, Plaintiff contends that a defendant must pay the full

23   amount of a plaintiff's demand for relief before a compromise settlement can be effective.  That position

24   has no basis in law and would render the Court's ADR program a nullity—there would be no need for

25   ADR if every valid settlement were required to consist of a full-demand payment.

26

27

28

1

**C.     Plaintiff's Focus On The Unexecuted Written Documentation Is Irrelevant**

2      Much of Plaintiff's opposition brief focuses on the unexecuted written documentation that was

3   intended to memorialize the binding, Court-recorded September 30, 2021 oral settlement agreement.  ECF

4   No. 101 ¶¶ 38-56.  But Plaintiff received the draft, unexecuted, written settlement documentation on

5   October 4, 2021, ***after*** he had entered into the binding agreement on September 30, 2021.  *Id.* ¶ 38.  The

6   unexecuted written documentation is irrelevant to the dispute currently before the Court because

7   Defendant seeks a Court order enforcing the oral settlement entered on the record during the September

8   30, 2021 settlement conference with Judge Spero.  *See* ECF No. 98.  Thus, anything that the unexecuted

9   written documentation says is simply immaterial to Defendant's motion to enforce.  *See, e.g.*, *Ross v.*

10  *Potter*, No. 05-2221-JWL, 2006 U.S. Dist. LEXIS 385, at *7 (D. Kan. Jan. 6, 2006) (observing that

11  "defendant is not seeking to enforce the written agreement.  Rather, defendant seeks to enforce the oral

12  agreement that plaintiff's counsel made on plaintiff's behalf on the record before the ALJ.  Thus, the

13  arguments presented by plaintiff concerning the written agreement are irrelevant to the issue before the

14  court-whether plaintiff is bound by the oral agreement made on the record-and the court expresses no

15  opinion whatsoever on the validity of the written settlement agreement.") (cleaned up).

16  **III.    Plaintiff's "First MOTION To Set Aside Settlement Agreement" Is Procedurally Improper,
          And Defendant Opposes It For The Reasons In Defendant's Motion To Enforce**

17

18      The ECF notification for Plaintiff's January 25, 2022 filing indicates that it is Plaintiff's "First

19  MOTION to Set Aside Settlement Agreement."  ECF No. 101.  To the extent the ECF notification could

20  be construed as a motion, it is not procedurally proper because neither the ECF notification nor the

21  underlying brief complies with the notice and supporting paper requirements of Civil Local Rule 7-2.  For

22  example, Plaintiff's filing does not notice a hearing for "not less than 35 days after filing of the motion."

23  Civil Local Rules 7-2(a) and 7-2(b)(2).  It also does not include a notice of motion.  Civil Local Rule 7-

24  2(b)(2).  Further, it does not include "a concise statement of what relief or Court action the movant seeks."

25  Civil Local Rule 7-2(b)(3).  Finally, it does not include a proposed order.  Civil Local Rule 7-2(c).

26

27

28

DEF.'S REPLY ISO MOTION TO ENFORCE; DEF.'S OPP. TO PL.'S MOTION TO SET ASIDE; AND DEF.'S NON-
OPP. TO PL.'S MT. TO EXTEND TIME
CASE NO. 3:19-CV-07432 WHO                        8

1    For the avoidance of doubt, even if Plaintiff's First MOTION to Set Aside Settlement Agreement

2   were procedurally proper, Defendant would oppose it for the reasons stated in this brief and in Defendant's

3   motion to enforce the September 30, 2021 oral settlement agreement.  ECF No. 98.

4   **IV.    To The Extent The Court Wishes To Consider Plaintiff's Late-Filed Response, Defendant Does Not Oppose Plaintiff's Request To Extend Time**

5

6    Plaintiff's response to the motion to enforce the settlement agreement was due on January 21, 2022

7   (ECF No. 98), but Plaintiff failed to file a response by that deadline.  The ECF notification for Plaintiff's

8   January 25, 2022 filing indicates that it was intended to be a motion to extend time to file a response brief.

9   ECF No. 101.  Just like Plaintiff's First MOTION to Set Aside Settlement Agreement, Plaintiff's motion

10  to extend time to file a response brief is not procedurally proper.  *Compare id. with* Civil Local Rule 7-2.

11   Nevertheless, to the extent the Court wishes to consider Plaintiff's untimely response brief,

12  Defendant does not oppose Plaintiff's procedurally improper motion to extend time.

13  **V.    Conclusion**

14   For the foregoing reasons, the Court should summarily enforce the September 30, 2021 settlement

15  agreement placed on the record by Judge Spero.

16  Dated:  January 28, 2022                          STEPHANIE M. HINDS
                                                        United States Attorney
17

18                                                      */s/ Jevechius D. Bernardoni*
                                                        Jevechius D. Bernardoni
19                                                      Assistant United States Attorney

20

21

22

23

24

25

26

27

28