UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT PRINGLE,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL REGAN, et al.,<br><br>   Defendants. | Case No. 19-cv-07432-WHO<br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Re: Dkt. No. 98 |

After almost two years of litigating claims that he was discriminated against on the basis of race, subjected to a hostile work environment, and retaliated against for engaging in protected activities, plaintiff Everett Pringle, an employee of the United States Environmental Protection Agency ("EPA"), orally agreed to a settlement before Chief Magistrate Judge Joseph C. Spero on September 30, 2021. But then he decided not to sign a written agreement memorializing its terms and indicated that he would move to set the agreement aside. The issue in defendant Michael Regan's motion to enforce the oral settlement agreement is whether it is binding. It is. Pringle brought only Title VII claims, not age discrimination claims that would have implicated the protections of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1). The parties formed a complete, binding agreement on the record. Defendants' motion is GRANTED.

## BACKGROUND

Pringle, who is African American, brought suit under Title VII of the Civil Rights Act of 1964, alleging three claims: discrimination on the basis of race, retaliation, and hostile work environment. Second Am. Compl. ("SAC") [Dkt. No. 27] ¶¶ 106-133. The claims stem from a series of events that occurred between 2015 and 2020. *See generally* SAC.

On September 30, 2021, Pringle and his then-counsel, Kellee Kruse, attended a settlement conference with Judge Spero. Mot. to Enforce Settlement Agreement ("Mot.") [Dkt.

1  No. 98] 1:24-25.  Two EPA attorneys, Azure'De Wilkins and Beatrice Wong, attended on Regan's
2  behalf.  *Id*. at 1:25-2:1.  At the end of the nearly five-hour conference, the parties reached a
3  settlement, which Judge Spero placed on the record.  *See id*. at 2:3-7.  He first told the parties:

> What I propose to do is to recite what I understand to be the terms of the settlement into the record, then I will ask the lawyers whether or not I have made any mistakes in reciting the settlement.  Once we have a mistake-free settlement, I'll ask each of the parties whether or not they understand and agree to the settlement.
>
> Once the settlement is agreed to, it is a binding deal enforceable in accordance with its terms.  Now, it is customary, and, moreover, it is wise, and it will happen in this case that the parties will endeavor to memorialize the settlement in a written document based on the standard formal agreement that the government has in such cases, and you'll negotiate that and hopefully sign it.  But if you fail in that endeavor for any reason or no reason, this is still a binding deal today.

*Id*. at 2:8-18 (citing Bernardoni Decl., Ex. A at 2:24-3:15).

Judge Spero then read the terms into the record:

> So this is the settlement as I understand it:  The defendant agrees to pay to plaintiff's counsel the sum of $200,000 for attorneys' fees and costs.  The defendant is relying on plaintiff's representation that this payment is for attorneys' fees and costs, and nothing in this agreement should be interpreted as a characterization of the payment for tax purposes.  Plaintiff is responsible for any and all taxes, interests, and penalties, if any, on the settlement amounts.
>
> Plaintiff releases the defendant from all claims known or unknown arising out of any events occurring up through today and waives California Civil Code 1542 which would otherwise forbid the release of unknown claims.
>
> The defendant agrees to expunge from plaintiff's personnel record documents related to the incidents raised in this lawsuit to the extent permitted by statute and regulation.
>
> The defendant agrees not to discipline the plaintiff for any conduct known by the defendant through today provided, however, that this agreement does not cover any actual or alleged harassment or retaliation by the plaintiff of any employees of the defendant.  Defendant states that it is not aware of, as of today, any such alleged or actual harassment or retaliation.
>
> This case will be dismissed in its entirety with prejudice.  Each side will bear its own attorneys' fees and costs except as otherwise indicated in the agreement.

Mot., Bernardoni Decl., Ex. A at 4:7-5:13.

Attorneys for both parties confirmed that these were the agreed-upon settlement terms.  *Id*.

2

at 5:16-21.  Judge Spero then turned to Pringle and asked:  "[H]ave you heard and understood the terms of the settlement that I just recited into the record?"  *Id*. at 5:24-6:1.  Pringle replied:  "I do, Your Honor."  *Id*. at 6:2.  "And do you agree to those terms?"  Judge Spero asked.  *Id*. at 6:3-4.  "I also agree, Your Honor," Pringle said.  *Id*. at 6:5.  Wilkins then agreed to the terms on Regan's behalf.  *Id*. at 6:11-13.

After receiving notice of the settlement agreement, I dismissed the case with prejudice on October 1, 2021, with the caveat that the order would be vacated and the matter restored if either party notified me within 90 days that settlement had not occurred.  *See* Dkt. No. 87.

Three days later, on October 4, Pringle received the written settlement agreement from his attorney.  Oppo. [Dkt. No. 101] ¶ 38.  On October 28, 2021, Pringle's counsel filed a motion to withdraw from the representation of Pringle, stating that he had informed them of his desire to proceed pro se.  Dkt. No. 91.  In his supporting declaration, Pringle stated that he wanted to set aside the settlement agreement.  *See* Dkt. No. 96-1.  I granted his motion on December 3, 2021.  Dkt. No. 97.  Regan filed this motion for settlement enforcement a month later.  Dkt. No. 98.

**LEGAL STANDARD**

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."  *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).  This extends to oral settlement agreements.  *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002).  The moving party bears the burden of showing that the parties formed a legally enforceable settlement agreement.  *Madani v. Cty. of Santa Clara*, No. 16-CV-07026-LHK, 2019 WL 402362, at *6 (N.D. Cal. Jan. 31, 2019) (citation omitted).  "The interpretation and enforcement of a settlement agreement is governed by the legal principles applicable to contracts."  *Brionez v. U.S. Dep't of Agric.*, No. C-01-3969-CW, 2007 WL 217680, at *2 (N.D. Cal. Jan. 26, 2007).  Courts administer state contract law principles when interpreting a settlement agreement, even when the underlying cause of action is federal.  *See Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993).  California law thus governs.

Under California law, the essential elements of a contract are:  (1) parties capable of contracting; (2) the parties' consent; (3) a lawful object; and (4) sufficient cause or consideration.

3

*Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civ. Code § 1550). If a valid agreement exists, two additional requirements must be met under federal law. *Madani*, 2019 WL 402362, at *7. First, the settlement agreement must be complete. *Id*. (citing *Callie*, 829 F.2d at 890. Second, both parties must have directly agreed to be bound by the settlement's terms or have authorized their respective representatives to settle the dispute. *Id*. (citing *Harrop v. W. Airlines, Inc*., 550 F.2d 1143, 1144-45 (9th Cir. 1977)).

An oral settlement agreement is enforceable even if no writing follows. As the California Court of Appeal has explained:

> Often, in cases where an oral settlement is placed on the record in the trial court, a written agreement will follow. If difficulties or unresolvable conflicts arise in drafting the written agreement, the oral settlement remains binding and enforceable under [California Code of Civil Procedure] section 664.6. Having orally agreed to settlement terms before the court, parties may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms.

*Elyaoudayan v. Hoffman*, 104 Cal. App. 4th 1421, 1431 (2003); *see also* Cal. Code Civ. Proc. § 664.6(a) ("If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court *or orally before the court*, for settlement of the case . . . the court . . . may enter judgment pursuant to the terms of the settlement.") (emphasis added).

## DISCUSSION

### I.      THE SETTLEMENT AGREEMENT

Focusing on the settlement agreement at issue—the oral agreement placed on the record before Judge Spero—Regan has met his burden in showing that it is valid and enforceable. Each of the essential elements of a contract are evident. The agreement is also complete, and the parties either directly agreed to be bound by the terms (Pringle) or authorized his representative to do so on his behalf (Regan).

Turning to the first element of a contract under California law, Civil Code section 1556 provides that "[a]ll persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights." Cal. Civ. Code § 1556. None of these exceptions apply to the parties, nor does either argue that they do.

Second, the object of the agreement is lawful. It provides that Regan pay Pringle $200,000

4

for attorneys' fees and costs, expunge from his personnel record documents related to the incidents in the lawsuit, and not discipline him for any known conduct. *See* Mot., Bernardoni Decl., Ex. A at 4:7-5:9. It also requires that Pringle release his claims against Regan. *Id.* at 4:18-22.

The third element, consent, or mutual assent, "usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Lopez*, 118 Cal. App. 4th at 1230. "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (citation omitted). "A party's unexpressed intent regarding the terms of a contract is irrelevant." *Ebates Performance Mktg. Inc. v. Integral Techs. Inc.*, No. 12-CV-06488-JST, 2013 WL 4427115, at *3 (N.D. Cal. Aug. 15, 2013).

By telling Judge Spero that they understood and agreed to the terms of the settlement agreement, the parties objectively manifested their consent. *See* Mot., Bernardoni Decl., Ex. A at 5:23-6:13. Pringle concedes that he accepted the terms of the agreement. *See* Oppo. at ¶ 28. If he had any other intent regarding the settlement, he did not express it. To the extent that he did not understand the scope of the agreement's terms or planned to later discuss settlement itself with his family, he did not ask Judge Spero or his attorney any questions on the record indicating such. *See id.* at ¶¶ 24-28 ("I asked no questions."); *see also*, Mot., Bernardoni Decl., Ex. A at 5:23-6:24. Based on Pringle's outward manifestations, a reasonable person would believe that he agreed to the settlement's terms. Consent is therefore satisfied.

Finally, there is also sufficient consideration.[1] "Consideration is satisfied when a party (1) confers or agrees to confer a benefit on a party not entitled to that benefit, or (2) suffers or agrees to suffer a prejudice that a party is not legally bound to suffer." *Madani*, 2019 WL 402362, at *8 (citing Cal. Civ. Code § 1605). The agreement provided that Regan would pay Pringle $200,000 for attorneys' fees, expunge documents from his personnel file, and not discipline him. Mot., Bernardoni Decl., Ex. A at 4:7-5:9. In exchange, Pringle released Regan from all claims. *Id.* at

---

[1] Pringle argues that there was no *additional* consideration offered in exchange for his waiver of the right to sue. *See* Oppo. at ¶ 58. Waiver is a separate issue, which I will address below.

5

4:18-22. In other words, each party agreed to confer a benefit upon the other and to suffer a prejudice that they were not otherwise entitled or obligated to.

The agreement also meets the two federal requirements articulated in *Madani*. First, Pringle directly agreed to be bound by the terms of the settlement, and Regan authorized Wilkins to do so on his behalf. *See id*. at 4:1-5; 5:22-6:13.

Next, an agreement is considered complete when "the parties have manifested their mutual assent to all the material terms." *Lee v. Retail Store Emp. Bldg. Corp.*, No. 15-CV-04768-LHK, 2018 WL 385207, at *4 (N.D. Cal. Jan. 10, 2018) (citation omitted). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890.

As I have explained, both parties manifested their mutual aset to all of the material terms of the settlement agreement. Those material terms are also certain and not in dispute, providing that: (1) Regan would pay Pringle $200,000 for attorneys' fees and costs; (2) Pringle would release Regan from "all claims known or unknown;" (3) Regan would expunge certain documents from Pringle's personnel record; and (4) Pringle would not be disciplined. *See* Mot., Bernardoni Decl., Ex. A at 4:7-5:9. Counsel for both parties confirmed that the terms as read by Judge Spero were accurate, and both parties agreed to those terms. *Id*. at 5:16-6:13.

Pringle contends that although he understood the terms of the settlement agreement were binding and enforceable, he believed that they included an ability to revoke the agreement under the OWBPA, which articulates specific waiver requirements for claims of age-based employment discrimination. *See* Oppo. at ¶¶ 36-37; *see also* 29 U.S.C. § 626(f)(1). But there is no indication that this was a material term to settling the case at hand, which focused on race-based, not age-based discrimination. *See Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1037 (9th Cir. 2011) ("[A] term may be 'material' in one of two ways: It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain."). Moreover, Pringle manifested his assent to the settlement's terms by agreeing to them on the record, without asking questions and after Judge Spero's warning that the oral agreement was binding regardless of what followed.

6

For these reasons, the oral settlement agreement is valid and enforceable.

## II. WAIVER

Pringle's primary argument is that the settlement agreement is invalid because it did not meet the requirements for waiver under Title VII or the Age Discrimination in Employment Act ("ADEA"), as articulated in the OWBPA. *See* Oppo. at ¶¶ 51-54. Neither point is persuasive.

### A. Waiver Under the ADEA

The ADEA prohibits age-based employment discrimination against anyone who is at least 40 years old. 29 U.S.C. § 623(a), 631(a). The OWBPA specifies that a person may not waive "any right or claim under" the ADEA "unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1). It then lists "a minimum" of eight factors that must be met for a waiver to be knowing and voluntary. *See id*. Those relevant to Pringle's argument include:

> 1) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
>
> 2) the waiver specifically refers to rights or claims arising under the ADEA;
>
> 3) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
>
> 4) the individual is advised in writing to consult with an attorney prior to executing the agreement;
>
> 5) the individual is given a period of at least 21 days within which to consider the agreement;
>
> 6) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired.

*See id*.

Pringle argues that the settlement agreement did not satisfy the ADEA/OWBPA waiver requirements because: (1) it "was not written in a manner that was clear and specific enough for

7

[him] to understand based on [his] education and business experience," particularly any "limitations regarding [his] ability to revoke the settlement agreement;" and (2) there was no additional consideration, "such as additional compensation," offered in exchange for his waiver of the right to sue. *See* Oppo. at ¶¶ 52-53, 58.

But Pringle misses the critical point: He filed suit under Title VII, not the ADEA. *See* SAC at ¶¶ 106-133. The SAC makes no mention of age-based discrimination. *See generally id*. And the law makes clear that OWBPA's heightened requirements for waiver apply to "any right or claim under this chapter"—in other words, to claims brought under the ADEA. *See* 29 U.S.C. § 626(f)(1)(B).

Pringle's oral agreement to release Regan of "all claims known or unknown arising out of any events occurring up through today" necessarily could not include any claims brought under the ADEA because the waiver was not in writing. *See id*. § 626(f)(1)(A) (stating that the waiver must be "written in a manner calculated to be understood by such individual."). It could therefore only be included in the written settlement offer. But Pringle's refusal to sign the written offer does not invalidate the oral agreement. *See Elyaoudayan*, 104 Cal. App. 4th at 1431.

Moreover, Pringle's invalid release of any ADEA claims can be separated from the rest of oral settlement agreement. Other courts faced with a similar dilemma have done just this. In *Johnson v. Veneman*, 569 F. Supp. 2d 148, 154-57 (D.D.C. 2008), the court held that the plaintiff waived his Title VII claims in an oral settlement agreement but not his ADEA claims, in part because the oral settlement did not specifically reference waiving ADEA claims and thus did not meet the OWBPA's requirements. Although the posture of that case was different (the defendant had filed a motion for summary judgment), the result is informative: the Title VII claims were barred while the ADEA claims survived. *See* 569 F. Supp. 2d at 155-57. An Eastern District of New York court arrived at the same result after finding that Title VII claims were waived in a written settlement agreement but that the ADEA's waiver requirements, as articulated in the OWBPA, were not satisfied. *See McMahon v. Napolitano*, No. 12-CV-5878, 2015 WL 13730700, at *8-9 (E.D.N.Y. Aug. 27, 2015), *adopted in full*, 2016 WL 233666 (E.D.N.Y. Jan. 20, 2016). That court also noted that "courts regularly enforce waivers and releases as to Title VII claims

8

even when they fail to satisfy the requirements of the OWBPA." *See id*. at *9 n.13.

The Supreme Court has also distinguished the waiver of ADEA claims. In *Oubre v. Entergy Operations, Inc*., 522 U.S. 422, 427-28 (1998), the Court held that an employee's written release did not satisfy the OWBPA and thus did not apply to her ADEA claim. But the Court indicated that the failure to comply with the OWBPA did not affect *all* claims:

> Since [the employee's] release did not comply with the OWBPA's stringent safeguards, it is unenforceable against her insofar as it purports to waive or release her ADEA claim. As a statutory matter, the release cannot bar her ADEA suit, *irrespective of the validity of the contract as to other claims*.

*Oubre*, 522 U.S. at 427-28 (emphasis added).

I agree with Pringle that his waiver of any ADEA claims did not comply with the strict standards of the OWBPA, primarily because the agreement was not in writing and did not specifically reference rights or claims arising under the ADEA. *See* 29 U.S.C. § 626(f)(1)(A)-(B). His agreement to release Regan from "all claims known or unknown" thus did not include any claims brought under the ADEA. However, that has no bearing on the enforcement of the settlement of his Title VII claims, which are the only claims he brought in this lawsuit.

**B.  Waiver Under Title VII**

Federal law governs the interpretation and validity of a release of Title VII claims. *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir. 1989). Such a release is valid if it was "voluntary, deliberate, and informed." *See id*. at 462. The Ninth Circuit uses a "totality of the circumstances" approach to determine this, evaluating "several indicia arising from the circumstances and conditions under which the release was executed." *See id*. (citations omitted). Courts consider four key factors: (1) "the clarity and lack of ambiguity of the agreement;" (2) "the plaintiff's education and business experience;" (3) "the presence of a noncoercive atmosphere for the execution of the release;" and (4) "whether the employee had the benefit of legal counsel." *See id*. (internal citations omitted); *see also Ryles v. Palace Hotel*, No. C-04-5326-SBA, 2006 WL 2850025, at *2 (N.D. Cal. Oct. 4, 2006) (applying the same standard); *Ferrara v. Wolf*, No. CV-

9

20-3421, 2020 WL 8172713, at *3 (C.D. Cal. Dec. 14, 2020) (same).[2]

All four *Stroman* factors appear to be satisfied. Pringle does not suggest that he was coerced into agreeing to the settlement. Rather, his primary argument is that because he does not have the "legal business acumen or education to under the legal limitations of the ADEA and/or Title VII provisions that were not explicitly spelled out" in the settlement agreement—specifically, his ability to revoke the agreement—waiver was invalid. *See* Oppo. at ¶¶ 51-54. While Pringle is not an attorney, he has worked at a federal agency for more than two decades, most recently as a senior environmental protection specialist. *See id.* at ¶ 34; SAC at ¶¶ 12-13. This, not to mention his opposition to the motion and oral presentation at the hearing, show that he had the "education and skills necessary to understand that . . . 'all claims' meant all legal claims, including claims brought under Title VII." *See Stroman*, 884 F.2d at 462-63 (finding that the plaintiff's Army training and business-related community college degree provided the sufficient education and skills).

Although the oral agreement contained some legal language, it is clear and unambiguous: It articulated what Pringle will receive, what Regan will receive, and what each party will give the other in return. If Pringle for any reason did not on his own understand some part of the agreement, he could have sought clarification from his counsel, who represented him leading up to and during the agreement's formation.[3] He could have asked Judge Spero to clarify his rights. *See* Oppo. at ¶ 27 ("I asked no questions."). He also could have declined to accept the oral

---

[2] Pringle references other considerations, including "whether the agreement has the effect of misleading, misinforming, or failing to inform participants and affected individuals," whether any advantages or disadvantages were "presented without either exaggerating the benefits or minimizing the limitations," and "whether the employer offered the employee consideration . . . that exceeded what the employee already was entitled to by law or contract and the employee accepted the offered consideration." Oppo. at ¶ 50. But Pringle does not cite to any cases establishing these factors as part of the Title VII waiver analysis that occurs within the Ninth Circuit. Rather, he references one case from the Fifth Circuit and another from the Third Circuit, neither of which are controlling here. *See id.*

[3] Pringle claims that his attorney advised him privately during the settlement conference that the written settlement agreement would include language from the OWBPA that would allow him to revoke the agreement. Oppo. at ¶ 23. Whether or not that occurred, the record is undisputed that at no time was that issue raised to Judge Spero or in open court at the time the oral settlement was announced and agreed to.

10

agreement until he received clarification. Instead, he confirmed to Judge Spero that he "heard and understood the terms of the settlement" as recited into the record and that he agreed to them. *See* Mot., Bernardoni Decl., Ex. A at 5:23-6:5.

As I stated at oral argument, before me is a narrow question: Is the oral settlement agreement enforceable? It is. The parties entered into a valid agreement, as read into the record by Judge Spero. Pringle's release of his Title VII claims is valid: it was knowing, voluntary, and deliberate. He did not release any claims under the ADEA, but that has no bearing on the settlement of his Title VII claims, which are the only claims at issue in this case.

## CONCLUSION

For the reasons stated above, the defendant's motion to enforce the oral settlement agreement is GRANTED. No ADEA claim has been released. With that exception, the parties shall adhere to the terms of the oral agreement as articulated.

**IT IS SO ORDERED.**

Dated: February 22, 2022

William H. Orrick
United States District Judge